IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEYON BOYD,** | : | |
| *Petitioner* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TOM MCGINLEY, et al.,** | : | **No. 20-2983** |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                                 OCTOBER 26, 2021

Petitioner Keyon Boyd seeks habeas corpus relief in challenging his state court convictions for first-degree murder, criminal conspiracy, carrying a firearm without a license, and possession of an instrument of crime. Mr. Boyd is serving a life sentence without parole. Mr. Boyd challenges his convictions based on sufficiency of the evidence and ineffective assistance of counsel on direct appeal for failure to raise two forms of asserted procedural errors. After the Report and Recommendation of Magistrate Judge Richard Lloret (the "R&R") recommended denying Mr. Boyd's Petition, Mr. Boyd filed objections. As set forth below, Mr. Boyd's objections are overruled and the R&R is adopted in full.

### BACKGROUND

Because Mr. Boyd raises a claim based on insufficiency of the evidence, the Court will briefly recount the relevant facts as evaluated and accepted by the Pennsylvania Superior Court on Mr. Boyd's collateral appeal. On June 27, 2006 at 12:20 a.m., a group of four armed men wearing black clothing and masks opened fire on a group of friends playing dice on a porch. Mr. Boyd's cousin, standing nearby, heard the gunshots and returned fire along with one of the dice players. One of the four men who originally opened fire, Stephen Rochard, was shot in the buttock and fell

face down, screaming "don't leave me" as his three companions fled the scene. The prosecution introduced evidence that Mr. Boyd, who was not one of the dice players, boasted to friends and family members that he then walked over to Mr. Rochard to ask him if he was ok, picked up Mr. Rochard's gun, and shot him three times in the back, causing fatal wounds. Mr. Boyd then worked with a friend to sell the gun. *Commonwealth v. Boyd*, No. 1999 EDA 2015, 2019 WL 1756707, at *1–2 (Pa. Super. Apr. 18, 2019).

At trial, the jury convicted Mr. Boyd of first-degree murder and the related charges. Mr. Boyd appealed his sentence to the Superior Court, challenging the sufficiency of the evidence and the admission of evidence that Mr. Boyd intended to provide information to federal authorities about other crimes. Doc. No. 7-2, at 2. After the Superior Court denied Mr. Boyd's claims, the Pennsylvania Supreme Court denied Mr. Boyd's application for allowance of appeal. Doc. No. 8, at 3. Mr. Boyd then filed a timely *pro se* application for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). *Id.*

The PCRA court appointed counsel, who amended Mr. Boyd's petition to include two claims of ineffective assistance by direct appeal counsel. Mr. Boyd asserted that direct appeal counsel failed to challenge two alleged trial errors: 1) allowing the prosecutor to ask an expert witness hypothetical questions not based on facts in evidence and 2) prosecutorial misconduct based on comments made by the prosecutor personally vouching for the credibility of witness Terrell Davis in closing arguments. *Boyd*, 2019 WL 1756707, at *3–5. The PCRA court denied Mr. Boyd's petition without a hearing and, after a lapse and reinstatement of his appellate rights, the Superior Court affirmed the denial of PCRA relief on appeal, *id.* at 2, 7, and the Pennsylvania Supreme Court denied Mr. Boyd's petition for review, *Commonwealth v. Boyd*, 218 A.3d 852 (Table) (Pa. 2019).

2

Mr. Boyd now raises three claims in the habeas petition here: 1) insufficient evidence to establish specific intent to kill or premeditation; 2) ineffective assistance of counsel for failure to appeal the trial court's admission of expert witness responses to hypotheticals based on facts and evidence not in the record; and 3) ineffective assistance of counsel for failure to appeal the trial court's error in allowing prosecutorial misconduct during closing argument.

## LEGAL STANDARDS

Before a federal court may grant a habeas petition to a person in custody from a state court judgment, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires petitioners to have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This means that the petitioner must have fairly presented his constitutional claims in "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal claim is fairly presented to the state courts when the petitioner has raised "the same factual and legal basis for the claim to the state courts." *Nara v. Frank*, 488 F.3d 188, 197–98 (3d Cir. 2007).

When the federal court reviews a claim that has been adjudicated on the merits by the state court, the AEDPA permits the federal court to grant a petition for habeas relief only if: (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear

3

and convincing evidence. *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner asserting ineffective assistance claims must establish that "counsel's performance was deficient," meaning the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). In applying § 2254(d), "the question is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## DISCUSSION

The R&R recommends denying all three of Mr. Boyd's claims for habeas relief. Mr. Boyd objects to the R&R on each of the same three grounds raised in his habeas Petition. Doc. No. 10. The respondents filed a response to Mr. Boyd's objections. Doc. No. 12. The Court will address each of Mr. Boyd's objections to the R&R in turn.

### I. Sufficiency of Evidence

Mr. Boyd objects to the R&R finding on his evidentiary sufficiency argument as "not objectively reasonable." Doc. No. 10, at 2. Mr. Boyd argues that the "jury could have found Petitioner did not have the specific intent to kill . . . , thereby supplying reasonable doubt" because he grabbed the victim's gun and did not bring his own, and the testimony of Mr. Boyd's cousin about what Mr. Boyd said was hearsay. *Id.* The respondents counter that what the jury "could have found" is irrelevant because the state court's only role in reviewing the sufficiency of the evidence was "whether that finding was so insupportable as to fall below the threshold of bare

4

rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam); Doc. No. 12, at 2. Whereas Mr. Boyd argues that he acted in the heat of passion in a gunfight and did not bring a gun himself, the jury credited testimony that Mr. Boyd was not involved in the initial gunfight and, after the other shooters ran away, Mr. Boyd saw Mr. Rochard wounded in the street, sarcastically asked Mr. Rochard if he needed help, and shot him three times in the back. Doc. No. 12, at 2.

Mr. Boyd argues that "[w]hile being shot in the back may be evidence that would be contrary to a self-defense claim, Petitioner did not allege self-defense." Doc. No. 10, at 2. However, the Superior Court noted that Mr. Boyd previously argued on direct appeal "that he shot Rochard in self-defense while Rochard was running towards him." Doc. No. 7-2, at 6. Looking to the evidence of Mr. Boyd's statements to friends bragging about the murder and the medical evidence, which showed that the victim was shot three times in the back, the Superior Court found that "the evidence was sufficient to establish that Appellant acted with the necessary intent and malice to sustain a conviction for first-degree murder." Doc. No. 7-2, at 6.

As to Mr. Boyd's objection that the testimony about his bragging was hearsay, Mr. Boyd provides no explanation as to how a statement made by the defendant against his interest would be inadmissible hearsay under Pennsylvania Rule of Evidence 803(25).[1] "[O]n habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge . . . [unless] the state court decision was 'objectively unreasonable.'" *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, at 2 (2011) (per curiam)). The full extent of Mr. Boyd's hearsay analysis is: "Reliance on this hearsay is misplaced." Doc. No. 10, at 2. A review of the prior state court decisions does not provide any indication that Mr. Boyd previously raised

---

[1] For example, Mr. Boyd offers no argument that there was a lack of corroborating evidence for a statement against interest. He does not even specify whose testimony among the multiple "friends and family members" to whom he boasted should be excluded as inadmissible hearsay. Doc. No. 8, at 2.

5

this issue. Nor did Mr. Boyd's Petition to this Court raise the issue of hearsay. Mr. Boyd also fails to introduce the portion of the record that he considers hearsay. Thus, the Court rejects Mr. Boyd's conclusory hearsay objection.

In addition, a "rational trier of fact could have agreed with the jury" in finding the requisite intent to kill based on the evidence that Mr. Boyd shot Mr. Rochard three times in the back with Mr. Rochard's gun. *Coleman*, 566 U.S. at 651; *see also Commonwealth v. Cruz*, 919 A.2d 279, 281 (Pa. Super. 2007) ("Evidence that the defendant shot the victim in the back with a handgun is sufficient to permit an inference of malice and specific intent to kill."). Therefore, the Court rejects Mr. Boyd's objections based on the sufficiency of the evidence.

## II. Ineffective Assistance Based on Hypotheticals

Mr. Boyd also objects to the R&R finding that his ineffective assistance of counsel claim is meritless. Mr. Boyd argues that his direct appeal counsel should have challenged the trial court's error in allowing testimony of the prosecution's ballistics expert in response to hypothetical questions that were not "based on facts or evidence in the record." Doc. No. 1, at 33. The R&R rejected this argument because it asks the Court to reexamine the state court's ruling on the PCRA appeal on a state law issue. The PCRA court ruled that, while the trial court applied the wrong legal standard, the hypotheticals were allowable under state law because they were based on evidence in the record, as required by the correct legal standard. Doc. No. 8, at 11. Mr. Boyd objects, arguing that "[f]ederal habeas court[s] re-examine state court rulings in the context of ineffective assistance of counsel claims all the time" and "[u]sing evidence of record does not change the fact that an incorrect standard was applied." Doc. No. 10, at 3.

Both of Mr. Boyd's objections are misplaced. First, the respondents correctly argue that, under *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004), "[f]ederal courts reviewing habeas

claims cannot 'reexamine state court determinations on state-law questions.'" (quoting *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). Because the challenge to the hypotheticals is a challenge to Pennsylvania rules of evidence already determined by a Pennsylvania state court, this Court cannot reexamine the Superior Court's PCRA ruling. As to the use of evidence of record, Mr. Boyd's claim in his Petition was that the hypotheticals were not "based on facts or evidence in the record." Doc. No. 1, at 33. Mr. Boyd apparently abandons this position in his objections, instead now asserting that the standard applied was the basis for his challenge regardless of whether the hypotheticals were based on facts or evidence in the record. Doc. No. 10, at 3. However, the Superior Court held that the trial court's application of a standard that did not require the hypotheticals to be based on facts or evidence in the record was ultimately irrelevant because both hypotheticals at issue ultimately were indeed based on facts or evidence in the record. *Boyd*, 2019 WL 1756707, at *4. Mr. Boyd's PCRA counsel, therefore, was not ineffective in exercising the professional judgment of deciding not to raise this issue on direct appeal.

### III. Ineffective Assistance Based on Prosecutorial Misconduct in Closing Argument

Lastly, Mr. Boyd challenges his counsel's failure to raise a prosecutorial misconduct issue on direct appeal. Mr. Boyd alleges that during closing argument, the prosecutor "was personally vouching for [or] even worse, personally testifying as to what happened at" a witness preparation session involving Mr. Boyd's cousin (who testified for the Commonwealth at trial), the prosecutor, and Detective McNamee. Doc. No. 1, at 40. The prosecutor commented on the prep session in response to defense counsel's closing argument, which implied that the cousin changed his story after the prep session. Doc. No. 8, at 12–13. While the majority of his comments pointed the jury to Detective McNamee's testimony about the prep session, he began by speaking in the first-person voice. *See e.g.*, Doc. No. 8, at 14 ("Because, frankly, what kind of lawyer would I be if I called a

7

witness to testify that I had never spoken to before and hadn't gone over the statement with and didn't know what he was going to say?"). Mr. Boyd objects to the R&R finding "that the Superior Court's resolution of this claim was a reasonable application of federal law." Doc. No. 10, at 4.[2]

First, Mr. Boyd argues that a portion of the prosecutor's statement given in the first-person voice is "clearly not referring to Detective McNamee's testimony but instead went on in the first person to vouch, perhaps for Terrell Boyd and/or Detective McNamee." Doc. No. 10, at 4. However, Mr. Boyd's characterization of the statements as "vouching" is unsupported. "For a prosecutor's conduct to constitute vouching, (1) the prosecutor must assure the jury that the testimony of a Government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Berrios*, 676 F.3d 118, 133 (3d Cir. 2012). Mr. Boyd emphasizes the prosecutor's statement that "I knew that there were certain things in his statement that I needed to clarify . . . ." Doc. No. 10, at 5. Mr. Boyd does not explain how the prosecutor's own uncertainty would *support* "the reliability of the evidence" offered by the prosecutor. *Id.* at 5. The remainder of the prosecutor's statement explicitly cited Detective McNamee's testimony on the record. Doc. No. 8, at 14 ("You heard Detective McNamee said that . . . Detective McNamee told you that . . . ."). The Superior Court's resolution of the prosecutorial misconduct issue was reasonable.

Mr. Boyd also objects to the R&R finding that the "prosecutorial misconduct did not so infect the trial with unfairness as to make the resulting conviction a denial of due process" because it was "quite significant, violating the Petitioner's right to due process and a fair trial. *Id.* at 5–6.[3]

---

[2] Mr. Boyd also objects that the R&R "ruling is both inconsistent with the facts and an incorrect application of the facts to the law." Doc. No. 10, at 5. He does not, however, state which facts are inconsistent or which laws are incorrectly applied.

[3] Mr. Boyd also emphasizes that his cousin's testimony was key because "there were multiple other individuals present, any of whom could have been the shooter, even Terrell Boyd himself." Doc. No. 10, at 7. This argument lacks merit because it clearly contradicts Mr. Boyd's own submissions, in which he

8

Applying the *Strickland* standard for ineffective assistance claims and the § 2254(d) habeas standard, this Court's review must be "highly deferential" to the Superior Court's resolution of the ineffective assistance claim raised on collateral appeal. *Harrington*, 562 U.S. at 105 (internal quotation marks omitted). The Superior Court found that "[t]he prosecutor did not state that either the detective or Terrell were being truthful, nor did he provide his own account of Terrell's clarification at the prep session." Doc. No. 7-4, at *6. This Court agrees with the R&R finding that "the prosecutor's brief comments—made in response to accusations that a witness had been coerced into changing his testimony—did not infect Mr. Boyd's trial with unfairness and make his conviction a denial of due process." Doc. No. 8, at 16.

Mr. Boyd also generally objects to the R&R finding that no certificate of appealability should issue. Doc. No. 10, at 8. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Boyd has not shown that "reasonable jurists" would find the "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As a result, this Court will not issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the objections to the R&R are denied and the R&R is approved and adopted. An appropriate Order follows.

**BY THE COURT:**

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

"avers that while he may have shot the victim, he did so in a rage and during a gun battle," Doc. No. 1, at 13, and emphasizes that he "grabbed the victim's gun and did not bring his own," Doc. No. 10, at 2.